IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>v.<br><br>SETH STEED JEFFS,<br><br>             Defendant. | MEMORANDUM DECISION AND ORDER OF REVOCATION AND DETENTION<br><br><br>Case No. 2:16-CR-82 TS<br><br>District Judge Ted Stewart |

This matter came before the Court on allegations that Defendant violated the terms of his pretrial release. The Court conducted a hearing on the matter on August 22, 2016. For the reasons discussed below, the Court will revoke Defendant's pretrial release and order his detention.

I. BACKGROUND

Defendant, along with ten others, is charged in an Indictment with conspiracy to commit Supplemental Nutrition Assistance Program ("SNAP") benefits fraud and conspiracy to commit money laundering. It is alleged that Defendant and his co-Defendants engaged in an elaborate scheme to defraud the federal government and launder money through the diversion of SNAP benefits.

Defendant was initially detained by the Magistrate Judge. However, upon stipulation of the government, he was released on conditions. In particular, Defendant was ordered to "avoid

all contact directly or indirectly with those named persons, who are considered either alleged victims, potential witnesses and/or codefendants, and Warren Jeffs, Ben Johnson."[1]

On July 27, 2016, the Court signed a Petition and Order for Action on Conditions of Pretrial Release. The Petition alleged that, on or about July 26, 2016, Defendant failed to abide by the conditions of release by failing to avoid contact with John Wayman, a co-Defendant. On August 2, 2016, the Court signed an Amended Petition. The Amended Petition added allegations that Defendant failed to abide by his conditions of release and was in the same location as John Wayman and/or Preston Barlow, both co-Defendants, on July 28, 29, and 30, 2016.

## II. DISCUSSION

A person who has been released under 18 U.S.C. § 3142 "and who has violated a condition of his release, is subject to a revocation of release, an order of detention, and a prosecution for contempt of court."[2] "[T]he person shall be brought before a judicial officer in the district in which such person's arrest was ordered for a proceeding in accordance with this section."[3]

> The judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer—
> (1) finds that there is—
> (A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or
> (B) clear and convincing evidence that the person has violated any other condition of release; and
> (2) finds that—
> (A) based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person

---

[1] Docket No. 164 ¶ 6(d).

[2] 18 U.S.C. § 3148(a).

[3] *Id.* § 3148(b).

will not flee or pose a danger to the safety of any other person or the community; or
(B) the person is unlikely to abide by any condition or combination of conditions of release.[4]

Thus, before a court may revoke Defendant's release it must make the following two findings: (1) either that there is probable cause that Defendant committed a crime while on release or that there is clear and convincing evidence Defendant violated any other condition of release; and (2) either that no condition or combination of conditions will assure that Defendant will not flee or pose a danger to any other person or the community, or that Defendant is unlikely to abide by any condition or combination of conditions or release.

Based upon the evidence submitted, the Court finds that there is clear and convincing evidence that Defendant violated the terms of his release as alleged in the Amended Petition. The evidence shows that, in the early hours of July 26, 2016, Defendant was summoned to a meeting by Nephi Jeffs, who had been instructed to call the meeting by Warren Jeffs. John Wayman was also present at the meeting. The evidence further shows that Defendant met additional times with John Wayman and, on one occasion, with Preston Barlow. All of these meetings violated the restriction that he have no contact with the co-Defendants.

Defendant attempts to argue that his conduct did not violate the spirit of his release conditions because he had been informed by his supervising officer that he could have limited contact with his co-Defendants. However, the evidence proffered at the hearing revealed that the approved conduct related to incidental contact with co-Defendants during religious services. That is, Defendants would not be prevented from attending religious services merely because

---

[4] *Id.*

other co-Defendants may also be present at that same service.  Defendant's argument that the conduct at issue falls within the ambit of approved contact is unavailing.  Defendant argues that he and his co-Defendants were merely compiling a list of FLDS members and contacting those members to inform them of an upcoming meeting.  Defendant provides no evidentiary support for this statement and the Court cannot be confident that other issues, such as this case, were not discussed.  However, even under Defendant's version of events, this is not the type of fleeting contact that Defendant was informed would be permitted.  Instead, he met with John Wayman and Preston Barlow for multiple hours over the course of four days without the prior approval of the Court or the probation office.

Having found by clear and convincing evidence that Defendant violated the terms of his release, the Court must next consider whether there are conditions that will assure that Defendant will not flee or pose a danger, or whether Defendant is unlikely to abide by any condition or combination of conditions.  After careful review of the evidence and the arguments of counsel, the Court finds that there are no conditions that will assure that Defendant will not flee or pose a danger.  The Court further finds that Defendant is unlikely to abide by any condition or combination of conditions of release.

As set forth above, Defendant violated the terms of his pretrial release by meeting with his co-Defendants.  Defendant violated these terms knowing full well that his actions were being closely monitored.  Defendant surely knew that his violations would be quickly detected.  Despite this, Defendant's willingness to violate his release conditions demonstrates a disinclination to comply with this Court's orders.  This is especially true where, as here, Defendant was directed to take this actions by someone acting on behalf of Warren Jeffs.  The

evidence supports the conclusion that Defendant will follow the dictates of Warren Jeffs, even if they run counter to the orders of the Court.  As counsel for Defendant stated at the hearing, this is a community that follows the instructions of their prophet.

In support of his request for release, Defendant points to his past dealings with law enforcement and his compliance with this Court's orders.  This evidence, however, must be weighed against the conduct here and his prior history.  Defendant Jeffs was previously arrested for and pleaded guilty to harboring Warren Jeffs.[5]  At the time of his arrest in that matter, Defendant Jeffs had approximately $140,000 in cash that appeared to be intended for Warren Jeffs.[6]  In addition, he had in his possession a video labeled "In Hiding," which depicted him with a moustache, goatee, and wearing "gentile" clothing in an apparent attempt to disguise his appearance.[7]  Defendant has also made use of the FLDS church's extensive network of safe houses.[8]  There is also some evidence that Defendant has destroyed potentially incriminating evidence at the request of Warren Jeffs.[9]  This evidence demonstrates that Defendant is a risk of flight, a danger to the community, and is unlikely to abide by any conditions of release.

Defendant also argues that detention is not necessary because the government monitors the communications of Warren Jeffs.  Defendant argues that the government will be the first to know should Warren Jeffs instruct him to flee or otherwise violate his release conditions.  However, the government represented that not all of Warren Jeffs' communications are

---

[5] *See* Docket No. 6 Ex. 24.

[6] *Id.*; *see also id.* Ex. 13.

[7] *Id.* Ex. 13.

[8] Docket No. 159 Ex. 117.

[9] Docket No. 6 Ex. 6.

monitored and that there is some delay in turning the correspondence over to the FBI.  Thus, the fact that the government monitors Warren Jeffs' communications does not alleviate the concerns expressed above.

### III.  CONCLUSION

It is therefore

ORDERED that Defendant's pretrial release is revoked and he is ordered detained pending trial.

DATED this 23rd day of August, 2016.

BY THE COURT:

_____
Ted Stewart
United States District Judge